Michelle A. Ryan, OSB No. 97388
Law Office of Michelle A Ryan, LLC
3050 SE Division Street, Suite 225
Portland, OR 97202
Telephone: (503) 284-3292
Fax (503) (503) 234-6207
mryan97388@yahoo.com

Attorney for Chris Darrell Joseph Sage

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

**UNITED STATES OF AMERICA,**

                 **Plaintiff,**

    **v.**

**CHRIS DARRELL JOSEPH SAGE,**

                 **Defendant.**

Case No. 1:13-cr-00100-MC

**DEFENDANT'S NOTICE OF APPEAL AND REQUEST FOR CERTIFICATE OF APPEALABILITY**

Notice is hereby given that Defendant Chris Darrell Joseph Sage, by and through

counsel, Michelle A. Ryan, appeals the Opinion & Order of the United States District

Court (Hon. Michael McShane) dated and entered October 11, 2017, which denied

his § 2255 Amended Motion to Vacate or Correct Sentence.

Defendant also respectfully moves this Court for entry of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(3), Fed. R. App. P. 22(b), and Ninth Circuit Rule 22-1(d).

Sage has made a substantial showing that (1) his convictions for Assaulting a Public Safety Officer (APSO) are not "violent felonies" for the purposes of ACCA and (2) his trial attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment, because his attorney failed to recognize or argue that these APSO convictions were not predicate convictions under the ACCA.

**Introduction**

Sage is serving a 240-month sentence imposed under the career offender and armed career criminal guidelines, U.S.S.G. § 4B1.1 and 4B1.4(b)(3), as a result of his guilty pleas to Felon in Possession of a Firearm and Possession with Intent to Distribute 50 or More Grams of Actual Methamphetamine, violations of 18 U.S.C. § 922(g)(1) and 924(e)(1) and 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).

Sage alleges that his sentence is unconstitutional because he received ineffective assistance of counsel and his predicate offenses are no longer valid as a result of *Johnson v. United States*, 135 S. Ct. 2551(2015).

//

## Background

On March 1, 2103, Sage was indicted on one count of Felon in Possession of a Firearm (18 U.S.C. §§ 922(g)(1) and 924(e)(1)). CR 1. That indictment alleged that Sage "had at least three previous convictions for violent felony or drug trafficking offense, including: Assaulting a Public Safety Officer in 2008, Manufacture of Methamphetamine in 2008, Possession of a Precursor Substance with Intent to Manufacture a Controlled Substance in 2003, and Manufacture of a Controlled Substance in 2003." The government's superseding indictment on April 8, 2013, included an additional charge of Possession of Methamphetamine with Intent to Distribute "50 or more grams of actual methamphetamine." (21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii)) CR13.

On November 12, 2103, Sage entered guilty pleas to both counts of the superseding indictment, acknowledging that the mandatory minimum was 20 years and the maximum sentence for each offense was life imprisonment. CR 36. As part of his plea agreement, the parties agreed that Sage was "an Armed Career Criminal on Count I based upon at least three of the following prior felony convictions, committed on separate occasions:

> 1) Assault on a Public Safety Officer x2, 11/17/08, C-Josephine, 07-CR-0353, 21 months
> 2) MCS Methamphetamine, 11/17/08, C-Josephine, 06-CR-0759, 24 months

3) PCS w/Intent to MCS, 2/6/03, C-Josephine, 03-CR-0082, 18 months
4) MCS Methamphetamine, 2/6/03, C-Josephine, 02-CR-0839, 24 months."

CR 35 ¶3. The parties also agreed that Sage was: "a Career Offender under U.S.S.G. §4B1.1(b)(1), based upon the following prior felony convictions, committed on separate occasions:

1) Assault on a Public Safety Officer x2, 11/17/08, C-Josephine, 07-CR-0353, 21 months
2) MCS Methamphetamine, 11/17/08, C-Josephine, 06-CR-0759, 24 months
3) PCS w/Intent to MCS, 2/6/03, C-Josephine, 03-CR-0082, 18 months
4) MCS Methamphetamine, 2/6/03, C-Josephine, 02-CR-0839, 24 months."

CR 35 ¶3. The plea agreement also detailed the §851 enhancement for prior drug felony for Count 2 that would result in a 20-year mandatory minimum sentence on that count. CR 35 ¶4. The parties agreed on the advisory sentencing guidelines with a total offense level of 34 and criminal history category of VI as a result of the ACCA and CO guidelines (including a three-level reduction for acceptance of responsibility, §3E1.1). CR 35 ¶7-8. The government agreed to recommend a low-end of the guideline range sentence. CR 35 ¶9. The plea agreement attempted to waive Sage's right to file a §2255 motion on any constitutional  ground except ineffective assistance of counsel. CR 35 ¶11.

The presentence report recommended a sentence of 262 months, based on a

guideline range of 262 to 327 months with a total offense level of 34, a criminal history category of VI, and a mandatory minimum sentence of 15 years for Count 1 and 20 years for Count 2.

In February 2014, as a result of Attorney General Holder's Smarter Sentencing Initiative, the government notified defense counsel that it would withdraw the §851 Enhancing Information and did so on May 8, 2014, thus eliminating the 20-year mandatory minimum sentence for Count 2. CR 45.

The defense argued for imposition of the mandatory minimum sentence of 15 years (180-months). CR 58 at 4. The government argued for imposition of a 262-month sentence (the low-end of the guideline range). CR 58 at 12. At sentencing, the government explained that the Guideline Range resulted from the Career Offender Guideline: "So 37 minus three for acceptance gets to 34." CR 58 at 19.

On May 12, 2014, after adopting the Guidelines calculations, the court sentenced Sage to 240 months imprisonment based on the seriousness of the offense. CR 58 at 24-25; CR 49.

Sage appealed his sentence through the United States Supreme Court and his petition for certiorari was denied.

//

//

**Summary of Claims**

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court declared the residual clause of the "violent felony" definition in the ACCA to be unconstitutional. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held *Johnson* "announced a substantive rule that has retroactive effect in cases on collateral review." In light of *Johnson*, Sage's prior convictions for Assaulting a Public Safety Officer do not quality as a "violent felony," because this crime does not match one of the generic enumerated offenses and does not have an element of the requisite force. Following *Johnson*, Sage's sentence should be vacated because the underlying offenses of Assaulting a Public Safety Officer no longer qualifies as a "violent felony" and this sentence enhancement was imposed in violation of due process of law. Accordingly, the sentence on his § 922(g)(1) conviction exceeds the permissible maximum sentence. Accordingly, he requested that he be re-sentenced as a result of the revised calculation of his Armed Career Criminal sentence.

The Armed Career Criminal (ACCA) statutory enhancement, 18 U.S.C. §924(e), was applied to these convictions based on Sage's prior convictions for Assault on a Public Safety Officer (APSO), Manufacture of a Controlled Substance (MCS), and Possession of a Precursor Substance with Intent to Manufacture a Controlled Substance (PPS). Sage's Assault on a Public Safety Officer convictions do not

constitute "crimes of violence" or "violent felonies." The sentencing court could have ruled that his conviction for Possession of a Precursor Substance with Intent to Manufacture a Controlled Substance either did not constitute a "serious drug offense" or found that because all of his predicates were drug offenses, chosen not to apply the Career Offender guideline.

Without the APSO convictions, it is unlikely that Sage would have received as lengthy a sentence. Earlier this year, the United States Sentencing Commission ("Commission") issued a *Report to the Congress: Career Offender Sentencing Enhancements*, analyzing career offenders' prior criminal history, incarceration terms and recidivism rates. The report found that offenders with only drug trafficking offenses recidivate at a lower rate than those with violent prior offenses and are less likely to commit a future violent offense.[1] *Id.* at 26. The report also found that courts generally impose a sentence below the career offender guideline range for drug trafficking only career offenders. *Id.* at 27. "[D]rug trafficking only career offenders are not meaningfully different than other federal drug trafficking offenders and therefore do not categorically warrant the significant increases in penalties provided for under the career offender guideline." *Id.* As a result, the Commission

---

[1]The Commission's recent recidivism report found that older offenders are at lower risk of re-offending. *Id*. at 41.

recommends that Congress amend the career offender directive "by no longer including those who currently qualify as career offenders based solely on drug trafficking offenses." *Id.* at 3.

Sage received ineffective assistance of counsel when his attorney agreed that he was an Armed Career Criminal based on his APSO and PPS convictions. Without those convictions, Sage would only have two prior "serious drug offenses" and no "violent felonies" or "crimes of violence." He would not have been subject to the ACC and his mandatory minimum would have been five, not 10, years imprisonment. See 18 U.S.C. §924(2).

**Basis for § 2255 Relief**

I.     *Johnson* **Claim:   Sage's Sentence Violates Due Process Because His Oregon Assaulting a Public Safety Officer Convictions Qualified as Violent Felonies Only Under the Now-Void Residual Clause.**

Under 28 U.S.C. § 2255, a petitioner is entitled to resentencing when his original sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Sage qualifies for relief because his 262-month sentence violates due process of law and was the result of ineffective assistance of counsel. His Oregon Assaulting a Public Safety Officer convictions qualified as predicate "violent felonies" and "crimes of violence" only under the now-void residual clause.

//

## A. The *Johnson* Holding Establishes That the Residual Clause of the "Violent Felony" Definition is Void for Vagueness and Cannot be Used to Enhance a Sentence Without Violating Due Process.

The ACCA increases a defendant's mandatory minimum sentence if he has three felony convictions that were either a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e). An offense qualifies as a "violent felony" if it is "punishable by imprisonment for a term exceeding one year" and:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(B) (emphasis added). The emphasized text is known as the "residual clause."

On June 26, 2015, the Supreme Court in *Johnson* declared this residual clause "unconstitutionally vague" because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557. Although the Supreme Court had sought through prior cases to "develop the boundaries of the residual clause in a more precise fashion," the court explained that "federal courts remained mired in 'pervasive disagreement' over how the clause should be interpreted." *Welch*, 136 S. Ct. at 1261. Thus, the Court held the residual clause "vague in all its applications"

and stated that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson*, 135 S. Ct. at 2557, 2561. The Court overruled its contrary decisions in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 131 S. Ct. 2267 (2011). *Johnson,* 135 S. Ct. at 2563.

The Ninth Circuit vacated and remanded for resentencing an ACCA sentence that was imposed in reliance on the residual clause. *United States v. McGregor*, 614 Fed. Appx. 921 (2015).

## B. The Rule from *Johnson* Applies Retroactively to Cases on Collateral Review.

Under the retroactivity principles of *Teague v. Lane*, 489 U.S. 288 (1989), a Supreme Court decision applies retroactively to cases on collateral review if it announces a "new" rule that is "substantive." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). *Johnson* satisfies both requirements. First, the Supreme Court in *Welch* accepted the undisputed position of the parties that *Johnson* announced a new rule because it was not dictated by precedent. 136 S. Ct. at 1264. *Johnson* expressly overruled *James* and *Sykes*, which had previously found that the residual clause was not void for vagueness. 135 S. Ct. at 2563. "The explicit overruling of an earlier holding no doubt creates a new rule." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citation omitted).

Second, *Johnson* is substantive, not procedural. A rule is substantive "if it alters

the range of conduct or the class of persons that the law punishes." *Summerlin*, 542 U.S. at 353; *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016) (substantive rules include those that "prohibit a certain category of punishment for a class of defendants because of their status or offense," or that "alter the range of conduct or the class of persons that the law punishes"). Substantive rules also include those that "narrow the scope of a criminal statute by interpreting its terms." *Summerlin*, 542 U.S. at 351-52 (citing *Bousley v. United States*, 523 U.S. 614, 620–21 (1998)). Procedural rules, by contrast, "regulate only the *manner of determining* the defendant's culpability." *Summerlin*, 542 U.S. at 353 (emphasis in original).

The Supreme Court in *Welch* held that *Johnson*'s rule is substantive, not procedural, because *Johnson* struck down the residual clause as void for vagueness, thus "altering the range of conduct or the class of persons that the [ACCA] punishes." 136 S. Ct. at 1264-65. The Court explained that "whether a new rule is substantive or procedural" is determined "by considering the function of the rule," which "depends on whether the new rule itself has a procedural function or a substantive function – that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons the law punishes." *Id.* at 1266. The *Johnson* limitation of the class of armed career criminals is substantive

because "'even the use of impeccable factfinding procedures could not legitimate' a sentence based on [the residual] clause." *Id.* at 1265. By the same token, the Court noted that *Johnson* did not qualify as a procedural decision:

> Johnson had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act. . . . It did not, for example, "allocate decisionmaking authority" between judge and jury . . . or regulate the evidence that the court could consider in making its decision . . . . *Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied.

*Welch*, 316 S. Ct. at 1265. The Court provided no limitation on its holding that *Johnson* is "a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." *Id.*; *accord In re Watkins*, 810 F.3d 375, 382 (6th Cir. 2015) (holding that *Johnson* is "categorically retroactive to cases on collateral review" because "[its] holding prohibits a certain category of punishment for a class of defendants based on their status: increased sentences for those defendants 'whose predicate offenses only qualify as such under the residual clause'"); *Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015) (holding that Johnson announced a new substantive rule because "the Supreme Court prohibited 'a certain category of punishment for a class of defendants because of their status'").

*Welch* cements the conclusion that *Johnson* is a substantive rule that applies on collateral review to sentences imposed under the unconstitutionally vague residual

clause of the "violent felony" provision of the ACCA.

**C.     In Light of *Johnson*, Applying the ACCA's "Violent Felony" Predicates to Enhance Sage's Sentence Violated Due Process Because His Oregon Assaulting a Public Safety Officer Convictions Qualified as Predicates Only Under the Now-Void Residual Clause.**

The enhancement of Sage's sentence flowed directly from an unconstitutional conclusion that he had a prior "violent felony" under the now-unconstitutional residual clause of the ACCA, and that "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges." *Johnson*, 135 S. Ct. at 2557. Applying the unconstitutional enhancements violated due process.

Following *Johnson*'s invalidation of the residual clause, an offense qualifies as a "violent felony" only if it falls within the remaining portions of the "violent felony" definition. That is, it must have "as an element the use, attempted use, or threatened use of physical force," or it must match one of the enumerated offenses of burglary of a dwelling, arson, extortion, or the use of explosives. U.S.C § 924(c)(2)(B). Sage's convictions of Assaulting a Public Safety Officer do not meet these criteria.

**1. Courts Use the Three-Step Categorical Approach to Determine Whether Prior Offenses Are "Violent Felonies."**

To determine whether a prior offense is a "violent felony," courts apply the three-step "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990),

and *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *United States v. Kelly*, 422 F.3d 889, 892 (9th Cir. 2005). First, the court must compare the elements of the state offense to the elements of the generic offense defined by federal law. *Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2015) (en banc), *as amended* Feb. 29, 2016. This process requires the court to "look to the elements of the offense rather than the particular facts underlying the defendant's own [case]." *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014). Because the categorical approach is concerned only with what conduct the offense necessarily involves, the court "must presume that the [offense] rest[s] upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (internal quotation marks and alterations omitted).

When a statute is overbroad, meaning that it criminalizes conduct that goes beyond the elements of the federal offense, the court must next determine whether the statute is "divisible" or "indivisible." *Almanza-Arenas*, 815 F.3d at 476-77. If the statute is indivisible, the analysis ends, because a conviction under an indivisible, overbroad statute "can never serve as a predicate offense." *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867-68 (9th Cir. 2015). In the "narrow range of cases" involving a "divisible" statute, the court may go beyond the categorical approach and apply the

"modified categorical approach," which allows the court "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2284 (internal quotation marks omitted).

A statute is "divisible" when it contains "multiple, alternative *elements* of functionally separate crimes," *Rendon v. Holder*, 764 F.3d 1077, 1084-85 (9th Cir. 2014) (emphasis in original), as opposed to just "alternative means of committing the same crime," *Almanza-Arenas*, 815 F.3d at 477. "[T]he key question [the court] must ask when determining a statute's divisibility is whether a jury would have to be unanimous in finding those separate elements." *Ramirez v. Lynch*, 810 F.3d 1127, 1134 (9th Cir. 2016). "Otherwise, the [Supreme] Court's express purpose for separating indivisible statutes from divisible statutes – preventing sentencing courts from finding *facts* on which a jury *did not* have to agree, rather than *elements* on which a jury *did* have to agree – would be undermined." *Rendon*, 764 F.3d at 1085-86 (emphasis in original).

The Assaulting a Public Safety Officer offenses used to enhance Sage's sentence qualified as violent felonies only under the residual clause. Because, under *Johnson*, the residual clause is void for vagueness, increasing a sentence based on

these convictions violates due process. Following *Johnson*, Sage is now serving an illegal and unconstitutional sentence.

**2. The Prior Offenses of Assaulting a Public Safety Officer Are Not "Violent Felonies."**

Following *Johnson*, Sage's prior convictions for Assaulting a Public Safety Officer (APSO) are not violent felonies because they qualified only under the residual clause. Oregon's APSO "causation of physical injury" does not match does not meet the generic definition of "aggravated assault," and therefore is not an enumerated offense under the ACCA.

The elements of Oregon's APSO statute do not match the "force element clause" of the ACCA. Oregon's APSO statute incorporates the common law view of "force" as any direct or indirect action resulting in physical injury, including acts of omission, thereby criminalizing conduct outside the scope of the ACCA. The ACCA defines "violent felony" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. §924(e)(2)(B)(i).

A person commits Oregon's APSO if he or she "intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer ...and while the other person is acting in the course of official duty." ORS 163.208(1). Essentially, this crime enhances the misdemeanor crime of Assault in

the Fourth Degree into a Class C felony when committed intentionally or knowingly and the victim is a peace officer.

The plain language of Oregon's APSO statute fails to include the requisite "use, attempted use, or threatened use of physical force" element. Rather, the crime is proven by causation of physical injury, which can be done with or without violent force against another. *See also United States v. Gomez-Hernandez*, 680 F.3d 1171, 1178 (9th Cir. 2012) ("[T]he threat or use of violence is not an element of the Model Penal Code's definition of aggravated assault, or a majority of state statutes"); U.S.S.G. §4B1.2 (listing "aggravated assault" in the Commentary as an example of a residual clause offense, and as of August 2016, as an enumerated crime of violence after deletion of the residual clause); *United States v. Crews,* 621 F.3d 849, 856 (9th Cir. 2010)(*overruled on other grounds, Johnson-2015*)(examining Oregon's second-degree assault crime using the residual clause test of the Career Offender guideline, not the force element clause).

"'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant." *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016)(citation omitted). Under Oregon law, "the gravamen of the fourth-degree assault charge [is] the unlawful and knowing

causation of physical injury." *State v. Teagues*, 281 Or. App. 182, 193-194

(2016)(where victim fell and skinned her knee, prosecution required to present

evidence "regarding any particular action by defendant that could have caused the

skinned knee"). To convict, the jury is *not* required to find the defendant

threatened or used force, only that the defendant committed *any* act or omission

that was a cause in fact of the resulting injury.

    *Mathis* concerned the comparison of elements of an ACCA predicate

conviction to the elements of a generic enumerated crime of violence. However,

the Supreme Court's definition of "element," and categorical method of

comparison governs the determination of whether an indivisible predicate

conviction satisfies the force element clause. *See Johnson v United States*, 559

U.S. 133 (2010)(discussing application of the categorical and modified categorical

approach for determining whether a divisible predicate conviction satisfied the

force element clause of the ACCA); *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867-

68 (9th Cir. 2015).

    The Supreme Court's opinion in *United States v. Castleman*, 134 S.Ct. 1405

(2014) does not apply to Oregon's APSO statute. The Court specifically cautioned

that its conclusion had no application to the "violent force" required under the

ACCA: "Whether or not the causation of bodily injury necessarily entails violent

force – a question we do not reach – mere offensive touching does not." *See Johnson*, 559 U.S. at 139-40. None of the many descriptions and examples of "violent force" in *Johnson-2010* include physical pain or injury caused by an act of deception, omission, or what *Castleman* noted might not be considered "violent" in a non-domestic setting: "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling," *Castleman*, 134 S.Ct. at 1411. Together, *Johnson-2010* and *Castleman* hold that "violent force" is not "the common law concept of 'force,'" and misdemeanor levels of "bodily injury" are unlikely to meet the quantum of "violent force" required for "violent felonies." *See United States v. Castillo-Marin*, 684 Fed 914, 923 (9th Cir. 2012)("We have made clear that the force required under the element prong of the §2L1.2 crime of violence definition 'must actually be violent in nature.'" USSG. §2L1.2 has the same definition of the element test as 4B1.2, *see* Application Note 1(B)(iii)).

"The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or "indivisible") set of elements to define a single crime. The court then lines up that crime's elements alongside those of the generic offense and sees if they match." *Mathis*, *supra* at 2248. Oregon's APSO statute does not require the use of strong, violent physical force. Its causation element of physical injury does not match the "use of physical force"

element for "violent felonies" or "crime of violence," and indeed sweeps more broadly, simply requiring that an injury was suffered. *See e.g., State v. Hendricks,* 273 Or. App. 1, 8 (2015), *rev. den.*, 358 Or. 794 (2016)(the elements of fourth-degree assault "contemplate a vast array of actions resulting, either directly or indirectly, in physical injuries"). Victim status is not a substitute for the application of force. *United States v. Fierro-Reyna*, 466 F.3d 324, 329 (5th Cir. 2006).

In 2014, the Ninth Circuit held that the federal offense of felony assault on a federal officer is *not* a crime of violence under the force element clause because it did not require violent force, but could be satisfied by "at least some form of assault ... [involving] any force whatsoever," even *de minimus* force, such as "chasing a prosecutor down the street and bumping into him." *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 921 (9th Cir. 2014).[2] Oregon's APSO statute is remarkably similar in that it incorporates *de minimus* force and lacks a use of force clause.

The broad causation element of Oregon assault allows for injury that is "caused indirectly, as, for example, by exposing another to inclement weather or by non-therapeutic administration of a drug or narcotic." Model Penal Code §211.1,

---

[2]This case was released on April 7, 2014.

Comment at 187-188 (1980). Causation extends to conduct that creates a situation in which the victim injures himself, such as telling a blind man walking toward a precipice that all is clear ahead, thus intentionally causing him to fall and hurt himself, or by a simple omission to act where there is a duty to act. 2 Wayne R. LaFave & A. Scott, Substantive Criminal Law, §16.2.Battery. Oregon case law recognizes causation of physical injury proven by failure to act. *See, e.g., State v. English,* 269 Or. App. 395 (2015)(defendant caused physical injury to child by failing to keep a dog that had a history of biting others away from child; conduct resulting in injury was reckless, not knowing).

There is a "logical fallacy inherent in reasoning that simply because all conduct involving a risk of the use of force also involves a risk of injury then the converse must also be true." *Dalton v. Ashcroft*, 257 F.3d 200, 207 (2nd Cir. 2001).

As a result, Oregon's APSO statute is overly broad and does not match the use of force clause in the ACCA. The enhancement of Sage's mandatory minimum sentence based on offenses that qualified as "violent felonies" only under the residual clause resulted in a sentence that violated due process.

Without the APSO convictions, it is unlikely that Sage would have received as lengthy a sentence because of the questionable use of the Career Offender guideline for drug only predicates. Sage's age would have been taken into

account. As the Commission has found, there is sharp decrease in recidivism rates for those 51 years and older as compared to those who are 41-50 years old (dropping from 42.4% to 24.7%). U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* (March 2016) at 23. This data is consistent with the Commission's prior recidivism reports. *See U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004) at 12, 28 ("offenders over age 50 have a recidivism rate of 9.5%").

II.     **Sage's Sixth Amendment Right to the Effective Assistance of Counsel Was Violated When His Trial Attorney Failed to Object to the Use of the Oregon Assaulting a Public Safety Officer Convictions as "Violent Felonies" and "Crimes of Violence" and Conceded to Sage Qualifying as an Armed Career Criminal, and a Career Criminal, and Sage Was Prejudiced as a Result of These Failures.**

Sage's trial attorney counsel was ineffective for conceding that his Oregon Assaulting a Public Safety Officer convictions qualified as "violent felonies" under the Armed Career Criminal statute and "crimes of violence" under the Career Offender guideline. Sage was prejudiced even though his prior convictions categorically qualified as a "violent felonies" or "crimes of violence" under the residual clauses at the time of sentencing. If he were sentenced *today*, those convictions would not qualify as "violent felonies." Without these "violent

felonies," his mandatory minimum sentence would have been ten, not 15 years. *Johnson* should be applied retroactively for purposes of determining whether Sage has demonstrated prejudice under *Strickland*'s second prong. *See Petrillo v. United States*, 147 F. Supp. 3d 9 (D. Conn. 2015).

There was no legitimate tactical reason for his trial attorney's failure. Sage had no charges dismissed as a result of his plea agreement. He could have forgone a plea agreement and argued that the prior convictions did not count as "violent felonies" or "crimes of violence." Furthermore, given that Sage entered his plea agreement in late 2013 and the Ninth Circuit released its *Dominguez-Maroyoqui* opinion in April 2014, trial counsel was obligated to contact the prosecution to renegotiate the plea agreement based on this new case, object to the use of these APSO convictions in the PSR, and object to them at the sentencing hearing that took place in May 2014.[3]

Had Sage been aware of that case, he would not have entered into this plea agreement and would instead have entered a guilty plea and made his sentencing arguments to the court. But for his trial attorney's errors, Sage's mandatory minimum sentence would have been 10, not 15, years. His resulting sentence

---

[3]This is especially true given that the government withdrew its § 851 Enhancing Information months after the plea agreement and PSR.

would have been at least 5-years less. Sage was prejudiced by his trial attorney's failures.

## Argument

### I. The Certificate of Appealability (COA) Standard Is Low.

A habeas corpus petitioner is entitled to a COA when he has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The United States Supreme Court has interpreted this showing to exist when "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 479 (2000). Later, in *Miller-El v. Cockrell*, 537 U.S. 3222, 337 (2003), the Supreme Court reaffirmed the low threshold for the petitioner, writing that "a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." The petitioner does not have to "prove, before the insurance of a COA, that some jurists would grant the petition for habeas corpus." *Id.* at 338. Indeed, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.*

This Court has adhered to the Supreme Court's position that the COA standard is not rigorous. *See Haywood v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010)

(overruled on other grounds by *Swarthout v. Cooke*, 562 U.S. 216 (2011)). ("What the requirement of a certificate of appealability does, and all it does, is screen out of the federal appellate courts claims that are not even debatable among reasonable judges, which is to say, frivolous claim"); *see also id.* ("All a prisoner needs is an issue debatable by reasonable jurists."); *Wilson v. Belleque*, 554 F.3d 816, 826 (9th Cir. 2009) (characterizing the COA standard as "not a particularly exacting one" and "non-demanding"); *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) ("[T]he COA requirement constitutes a gate keeping mechanism that prevents us from devoting judicial resources on frivolous issues while at the same time affording habeas petitioners an opportunity to persuade us through full briefing and argument of the potential merit of issues that may appear, at first glance, to lack merit.").

## II.    Sage's Claims Are Not Frivolous and a COA Should Be Granted.

Because Sage raised non-frivolous claims of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and presented argument that his APSO convictions were not predicates for the ACCA, he has met the standard for a COA, and the district court should have granted one.

### Conclusion

The threshold for granting a Certificate of Appealability (COA) is "modest."

To establish a "substantial showing of the denial of a constitutional right," the defendant must only raise a "debatable" non-frivolous issue. Although the district court denied relief, Sage's claims were not legally frivolous. Sage was denied his right to the effective assistance of counsel when his trial attorney conceded that his APSO prior convictions constituted predicates for the ACCA and CO and the sentencing court's reliance on these predicates violated his due process rights as laid out in *Johnson*.

Sage respectfully requests that this Court issue a COA and allow him to proceed with his appeal because jurists of reason could agree that his motion should have been resolved in a different manner. *See Slack*, 529 U.S. at 483-84. The issues in this case are "debatable" and Sage "deserve[s] encouragement to proceed further." *Id.* at 484.

Respectfully submitted this  22nd  day of  November  ,  2017 .


  /s/ Michelle Ryan
Michelle A. Ryan, OSB 97388
Attorney for Chris Darrell Joseph Sage